UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 1:23-cr-10216-DJC-3 |
| LATASHA ANDERSON,<br>    Defendant | ) ) ) ) | |

### DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

The Defendant, Latasha Anderson ("Ms. Anderson" or "Defendant"), submits this memorandum to assist the Court in reaching an appropriate disposition in this sentencing. For the reasons set forth below, Ms. Anderson requests that the Court exercise its considerable discretion and sentence her to time served of one day, followed by a three-year term of supervised release. Considering all the circumstances present in the Defendant's case and her personal characteristics and struggles, such as sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. §3553(a), yet still reflects the seriousness of the offense, promotes respect for the law and provides just punishment.

**I.      PERSONAL FACTS AND OFFENSE BACKGROUND**

Latasha Anderson is a 39-year-old mother of two who has overcome many struggles in her life, including the drug addiction which led to her ruinous involvement with Jermal Anderson's prostitution ring over ten years ago, which now has brought her before the Court to face punishment.

Born in Lynn, Massachusetts, Ms. Anderson lived with her mother and stepfather, essentially as an only child. While her home life was stable, she nonetheless was exposed to drug use at an early age as she witnessed several aunts, uncles and cousins use and abuse drugs. As a

1

teenager, she began a relationship with a drug dealer who abused her, physically, emotionally and sexually. He also began her on the path to drug addiction, first with pills, then proceeding to crack cocaine.

Having left her abusive boyfriend, and with no other means to support her worsening crack habit, Ms. Anderson turned to prostitution to get drug money. While she initially worked on her own as a prostitute, she eventually fell in with her cousin, co-defendant Jermall Anderson ("Jermall") , and began working with his prostitution ring. Like the other women who worked for Jermall, Ms. Anderson was controlled by him through her crack cocaine addiction and his ability to supply her with drugs. In addition to doing Jermall's bidding *vis a vis* the other women, she also engaged in prostitution for him, always with the same goal - to continue obtaining obtain drugs from Jermall.

In addition to keeping Ms. Anderson's in line by feeding her crack addiction (just as he did with the other women) Jermall financially abused her as well. In 2015, he used her name and social security number to collect over $40,000.00 in gambling winnings in order to hide them from the IRS. This resulted in Ms. Anderson losing her Social Security Disability benefits which, in turn, caused her to lose her apartment. It took Ms. Anderson nearly ten years of dealing with the police, Social Security Administration and IRS to finally recover the benefits she lost due to Jermall's actions. In a similar vein, Jermall used Ms. Anderson to rent cars in her name but for his use. He would then keep the cars beyond the rental period, and, on at least one occasion, he returned the car to Florida, rather than Massachusetts from where it was rented. His actions not only exposed her to criminal charges of grand theft, but also Enterprise Rental Cars has prohibited her from renting their cars or even being on its premises. Simply put, Ms. Anderson was yet another victim of Jermall's actions, the repercussions of which she continues to deal with to this day.

Yet, despite the emotional, physical and financial hardships she suffered from her time working for Jermall's prostitution operation, over the course of the past ten years she has made remarkable strides in reclaiming her life.  With the help and support of her family, most notably her Aunt Betty, she overcame her addiction to crack cocaine and has been sober since 2017.  Realizing it would take more than just a loving and supportive family to help her maintain a positive lifestyle, and she has been receiving psychiatric and psychological counseling to help her deal with a variety of previously undiagnosed psychological issues, including bi-polar disorder and post-traumatic stress disorder.  She also has taken steps to improve her physical health, including, most recently, bariatric surgery to address her life-long weight problem and the physical and emotional issues that accompanied it.

As justifiably proud as she is at the progress she has made in reclaiming her life from a world of drug addiction and prostitution, her greatest joy comes from her two children, nineteen-year-old Makayla and four-year-old Jacques and she would like nothing more than the chance to be able to stay with them to guide them away from her mistakes and demonstrate by example that the most difficult challenges in life can be overcome.

## **AUTHORITY AND ARGUMENT**

I.     *Sentencing Standards Under Booker, Gall and Kimbrough Allow this Court Broad Discretion to Impose Sentences Below the Sentencing Guidelines Range*

The applicable legal standards are, by now, well-established. With the Supreme Court decisions in *United States v. Booker*[1], *Gall v. United States*[2], and *Kimbrough v. United States*[3], federal sentencing has undergone dramatic changes, and the sentencing options available to district

---

[1] 543 U.S. 220 (2005).
[2] 128 S.Ct. 586 (2007).
[3] 128 S.Ct. 558 (2007).

courts have significantly broadened in the wake of *Booker* and its progeny.[4] No longer are district courts bound by the strictures of the Guidelines or even permitted to presume that the Guidelines provide the appropriate sentence in a given case.

Of course, the Guidelines do remain the starting point and the initial benchmark. Post-*Gall*, however, "the district court's discretion in determining a defendant's sentence is very broad; once the guidelines sentencing range is properly calculated, 'sentencing becomes a judgment call' for the court, and the court may construct a sentence varying from the guidelines sentencing range 'based on a complex of factors whose interplay and precise weight cannot even be precisely described."[5] Moreover, post-*Kimbrough*, sentencing courts may "deviate from the guidelines in an individual case even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing Commission."[6]

---

[4] *See, e.g.*, *U.S. v. Taylor*, 532 F.3d 68, 69 (1st Cir. 2008) ("The Court's decision in *Gall*, combined with its decisions in *Kimbrough* ... and *Rita v. U.S.*, 127 S.Ct. 2456, ... (2007), makes clear that in the post-*Booker* world, district judges are empowered with considerable discretion in sentencing ...."); *U.S. v. Boardman*, 528 F.3d 86, 87 (1st Cir. 2008) (district court has "broader freedom than it did before *Kimbrough*"); *United States v. Rodriguez*, 527 F.3d 221,225 (1st Cir. 2008) ("In *Gall*, ... the Justices expounded further on a district court's authority to vary from the guidelines, emphasizing that district courts have wide latitude in making individualized sentencing determinations"); *U.S. v. Politano*, 522 F.3d 69, 73 (1st Cir. 2008) ("In view of the Supreme Court's recent decision in *Gall*, we emphasize that the broad discretion afforded to the district court is paramount"); *U.S. v. Martin*, 520 F.3d 87, 90 (1st Cir. 2008) ("*Gall* makes clear that courts of appeals must grant district courts wide latitude in making individualized sentencing determinations"); see also *U.S. v. Thurston*, 544 F.3d 22, 26 (1st Cir. 2008) (affirming sentence which court had twice previously vacated in light of Gall's broader definition of the deference given to district judges' sentencing decisions).

[5] *U.S. v. Innarelli*, 524 F.3d 286, 291 (1st Cir. 2008), quoting *Martin*, 520 F.3d at 92. To the extent there exist "sound, case-specific reasons" to do so, a sentencing court is authorized to deviate from the Guidelines. *Martin*, 520 F.3d at 91. The post-*Gall* sentencing inquiry, after the court has calculated the GSR, is "broad, open-ended, and significantly discretionary." Id. at 92.

[6] *Politano*, 522 F.3d at 74, quoting *Martin*, 520 F.3d at 96; see, e.g., *U.S. v. Vanvliet*, 542 F.3d 259, 271 (1st Cir. 2008).

As the Supreme Court stated in *Booker*, the guideline provisions of the United States Sentencing Commission are advisory in nature. Although this remains accurate statement, the Supreme Court's jurisprudence on criminal sentencing has subsequently evolved even further from the mandatory nature of the Sentencing Guidelines towards virtually unlimited judicial discretion.[7] Under *Booker,* the Supreme Court held that the Sentencing Guidelines were "effectively advisory" and that sentencing courts were required to "consider Guideline ranges" but were permitted to "tailor the sentence in light of other statutory concerns" under 18 U.S.C. § 3553(a).[8] The Supreme Court further expanded a district court's discretion through the twin cases of *Gall* and *Kimbrough*. Analyzed concurrently, the crux of these two cases are: (1) the Sentencing Guidelines are only advisory in nature; (2) there is no rule requiring "extraordinary circumstances" to justify sentences outside of the Guideline's range; (3) a presumption of unreasonableness for sentences outside of the Guideline's range is impermissible; and (4) in order to impose a sufficient, but not greater than necessary, sentence, district courts may use a combination of the Sentencing Guidelines, the § 3553(a) factors, and other non-statutory factors, including a judge's disagreement with the sentence obtained by the Guidelines, to arrive at an appropriate sentence.[9]

In *Gall*, the Supreme Court held that district courts must follow a three-step process to determine a sufficient sentence. First, the court should begin by correctly calculating the applicable Sentencing Guideline range.[10] Second, after giving both parties an opportunity to argue for what sentence they deem appropriate, the district court should then consider all the enumerated factors under Section 3553(a) in order to determine whether they support the sentence requested by a

---

[7] See *Gall v. U.S.,* 128 S.Ct. 586 (2007); *Kimbrough v. U.S.,* 128 S.Ct. 558 (2007).
[8] *Booker*, 543 U.S. at 245.
[9] *Id.*
[10] *Gall,* 128 S.Ct. at 596.

party.[11]  "In doing so, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented."[12]  If the court determines that a departure is appropriate, it must consider the "extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance."[13]  However, there is no requirement that such departure needs to be based on "extraordinary circumstances," and, when reviewing a sentence, appellate courts are not permitted to apply a presumption of unreasonableness for sentences outside the Guidelines range.[14]

Third, after the determination of an appropriate sentence, the district court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."[15]  Similarly, in *Kimbrough*, the Supreme Court issued an opinion holding that a district court has the discretion to issue a sentence outside the Guidelines range based on the court's opposition to the result obtained under the Guidelines—even if the departure is based on the district court's disagreement with the Guidelines itself.[16]

II.    *Applying Factors Under 18 U.S.C. § 3553(a) to the Circumstances of Ms. Anderson's Case Supports a Downward Variance From the Sentencing Guidelines*

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[11] I*d.*
[12] *Id.* at 596-97.
[13] *Id.*, at 597.
[14] *Id.*, at 595.
[15] *Id.*, at 597.
[16] *Id.,* at 575.

   b. to afford adequate deterrence to criminal conduct;

   c. to protect the public from further crimes of the defendant; and,

   d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs courts to consider the following factors:

   1. "the nature and circumstances of the offense and the history and characteristics of the defendant"§ 3553(a)(l);

   2. "the kinds of sentences available" § 3553(a)(3);

   3. "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" § 3553(a)(6); and,

   4. "the need to provide restitution to any victims of the offense."  § 3553(a)(7).

Section 3553(a) directs district courts to impose a sentence sufficient, but not greater than necessary.[17]  "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in human failings, that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure."[18]  In certain cases, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."[19] Ms. Anderson respectfully asserts that this is such a case. Applying the §3553(a) and other relevant factors

---

[17] 18 U.S.C. § 3553(a); *Gall*, 128 S.Ct., at 596 n.6.
[18] *Id.,* at 598.
[19] *Id.*, at 599.

establishes that Ms. Anderson's recommended sentence of three years' supervised release would constitute a sufficient sentence under the circumstances.

    A. *Nature and Circumstances of the Offense and History and Characteristics of the Defendant--§3553 (a)(1)*

While Ms. Anderson fully accepts, and has accepted, responsibility for the part she played in Jermall Anderson's prostitution organization, any evaluation of the circumstances surrounding her participation must take into account her drug addiction and that her actions were driven by the fact that Jermall could provide the drugs she needed. In a very real sense, she was every bit as much a victim of Jermall's manipulation of her addiction as Victims 2 and 3 were of her actions. At the end of the day, all of the women, including Ms. Anderson, were manipulated and victimized by Jermall. She certainly did not profit financially from her involvement with Jermall. Indeed, he took advantage of her financially in a way beyond that of his other victims. He didn't just take the money she earned; he essentially stole her identity for his own fraudulent ends, and it took years for her to recover.

Nonetheless in the nearly ten years since this offense occurred Ms. Anderson has, through her own hard work and the support of family and friends, turned her life around, overcome her drug addiction and become a valued member of her community as reflected in the numerous support letters submitted to the Court on her behalf. An examination of the nature and the circumstances of the offense and Ms. Anderson's history and characteristics demonstrate that her actions were from a dark time in her past when addiction and undiagnosed, untreated psychological issues led her to engage in behavior totally at odds with the woman she is today.

    B. *Need for the Sentence Imposed—§ 3553(a)(2)*

This factor instructs the Court to consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter crime,

protect the public from the defendant, and provide the defendant with needed medical care in the most effective manner.[20] It is important to note that Ms. Anderson does not contest the seriousness of her offense or its consequences, rather merely desires to explain her conduct. In the case at bar, there is no need to protect the public from Ms. Anderson because the circumstances that led her to commit these offenses no longer are present in her life (although she fully understands and appreciates the fact that addiction is a lifelong affliction against which she must always be on guard). She does not pose a threat to the community and, indeed, has become a valuable member of the community whose life experiences can serve as both a warning and a model to others.

    C. *Kinds of Sentences Available*

This factor is intended to accord "flexibility" to sentencing judges by "provid[ing] alternatives to incarceration where necessary."[21] For example, probation, home detention and community service are available alternatives to extended imprisonment because they are permitted through variance under *Booker* and *Gall*. As considered more fully under factor (a)(5), infra, "utilization of alternatives to incarceration in appropriate cases" motivated the institution of the Guidelines and is intended to be undertaken in a manner complimentary to their policies.[22]

    D. *Kinds of Sentence and the Sentencing Range Established by the Guidelines*

In *Gall*, the Supreme Court reaffirmed that "the Guidelines are only one of the factors to consider when imposing sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment."[23] The generalities of the Guidelines can be unjust and contrary to reason. In some cases, the sentence suggested by the Guidelines is not appropriate, as one size cannot be said

---

[20] 18 U.S.C., §3553(a)(2) (2006); *Gall*, 128 S.Ct. at 596.
[21] *U.S. v. K*, 160 F. Supp. 2d 421, 431 (E.D.N.Y. 2001).
[22] *Id*., at 432.
[23] *Gall*, 128 S. Ct. at 602.

to fit all. No chart of numbers will ever fully contemplate or quantify the endless variations of the human experience. The unique facts of this case justify variance from that range and warrant the imposition of Ms. Anderson's recommended sentence.

### E. Pertinent Policy Statements

Here, Ms. Anderson's recommended sentence is in line with the public policies of the Sentencing Guidelines. The Sentencing Reform Act of 1984[24], which created the United States Sentencing Commission and delegated to that Commission the authority to create the Guidelines, was enacted in part to address prison overcrowding.[25] In the Sentencing Reform Act, Congress instructed the Commission to formulate the Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of Federal prisons."[26] "[U]ndergirding the federal sentencing reform movement was the notion that prison overcrowding or costly expansion could best be controlled through selective incapacitation and utilization of alternatives to incarceration in appropriate cases."[27] "Discretion to impose alternatives to incarceration was to be an important means of eliminating prison overcrowding under the Act."[28]

### F. Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires judges to consider the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.[29] To reach an appropriate sentence, these disparities must be weighed against the other § 3553(a) factors."[30]

---

[24] Pub.L. No. 98-473, § 211, 98 Stat.1987, 1989 to 90 (1984).
[25] *K*, 160 F. Supp. 2d at 432. ("What is often ignored in rigidly applying the current Guidelines, is another of the statute's aims — reducing prison overcrowding.").
[26] 28 U.S.C. § 994(g) (2006).
[27] *K*, 160 F. Supp. 2d at 432.
[28] *Id.*
[29] *Gall*, 128 S. Ct. at 599; *see also, Kimbrough*, 128 S. Ct. at 574.
[30] *Kimbrough*, 128 S. Ct. at 574.

### III. *Application to Defendant's Case*

Applying the above factors, this is a case that warrants the imposition of Ms. Anderson's recommended sentence of supervised release. Ms. Anderson has recognized her mistakes and is remorseful, not only for how they effected the other women, but also for the distress her family has suffered as a result of her actions. She has accepted responsibility for her actions and is prepared for the consequences. Sentencing her to the Government's recommended Guideline sentence, however, would be "greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C.A. § 3553(a)."[31]

### A. *Defendant's Request For Downward Variance*

Considering the totality of the factors set forth in 18 U.S.C. §3553(a) Ms. Anderson respectfully seeks a downward variance from the otherwise applicable Guideline Sentencing Range. Outside of the current case she has no prior convictions and over the course of nearly ten years since her offense of conviction she not only has had no other arrests or convictions she has transformed her life in a manner worthy of praise and not condemnation. The letters sent by friends and family as well as her treating counselors state the case for leniency eloquently. In addition, she has two children at home who depend on her and would undoubtedly suffer greatly should be incarcerated for conduct which occurred, at least in the case of Jacques, years before he was born.

While the charges before the Court are serious, they do not define the entirety of who Latasha Anderson truly is; more than a decade ago, she was gripped by a devastating crack cocaine addiction that nearly destroyed her life. But through determination, treatment, and the support of those who refused to give up on her, she fought her way to sobriety. For the last ten years, she has remained clean and worked hard to rebuild her life with honesty and purpose. She has become a

---

[31] *Id.*, at 565.

source of stability and support for others in her community, often mentoring women facing the same struggles she once endured. Latasha is not the same person she was during the lowest points of her life — she is living proof that people can change. She is deeply remorseful for her actions and fully prepared to accept responsibility, but she also stands here as someone who has overcome immense adversity and is committed to continuing her path of rehabilitation and redemption. Ms. Anderson respectfully submits that the Court is uniquely justified in sentencing her to time served followed by a three year term of supervised release. Such a sentence would be fair and just under the circumstances and would undoubtedly be "sufficient but not more than necessary" to meet the goals of §3553(a).

For the above-stated reasons, Ms. Anderson respectfully requests the Court grant her a downward variance and adopt her sentencing recommendation.

Dated: June 5, 2025                                       Respectfully submitted:

                                                          LATASHA ANDERSON
                                                          By and through her attorney,

                                                          /s/ *Paul J. Andrews*
                                                          Paul J. Andrews, BBO No. 558574
                                                          pandrews@dharlawllp.com
                                                          DHARLAW llp
                                                          Schraft's City Center Powerhouse Bldg.
                                                          529 Main Street, Suite P200
                                                          Charlestown, Massachusetts 02129
                                                          Office: 617-880-6155
                                                          Mobile: 781-367-3046
                                                          Fax: 617-880-6160

**CERTIFICATE OF SERVICE**

I, Paul J. Andrews, hereby certify that a true and accurate copy of this document, and all supporting attachments, if any, have been delivered by ECF upon all parties registered with CM/ECF in this matter on the date above.

/s/ *Paul J. Andrews*
Paul J. Andrews